UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RANDY FINCH                                        CIVIL ACTION

VERSUS                                                  NO. 25-324

CAPT. HENRY WASHINGTON, ET AL.                 SECTION: "L"(3)

## REPORT AND RECOMMENDATION

Randy Finch, a Louisiana state prisoner, filed this federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. For the following reasons, it is recommended that the application be **DISMISSED WITH PREJUDICE**.

Finch was charged with second degree murder.[1] After a jury trial, on June 26, 2002, Finch was found guilty as charged.[2] On July 16, 2002, the trial court denied Finch's post-trial motions, and sentenced him to a term of life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence.[3]

Finch, through counsel, filed a direct appeal to the Louisiana Fourth Circuit Court of Appeal alleging that the evidence was insufficient to sustain his conviction for second degree murder.[4] Finch filed a *pro se* supplemental brief in which he claimed his trial counsel was ineffective for (1) waiving his right to a jury trial; (2) refusing to allow him to testify; (3) refusing to call other witnesses; and (4) withdrawing the motion for new trial and judgment of acquittal.[5] On July 23, 2003,

---

[1] R. Doc. 16-1 at 51–52, Bill of Indictment, 11/15/01.
[2] *Id.* at 76, Trial Minutes, 6/26/02.
[3] *Id.* at 78, Sentencing Minutes, 7/16/02; *id.* at 45–48, Sentencing Transcript, 7/16/02.
[4] *Id.* at 35–43, Appeal Brief, 12/30/02.
[5] *Id.* at 11–19, Pro Se Appeal Brief, 4/4/03.

the court affirmed Finch's conviction and sentence.[6] The Louisiana Supreme Court then denied Finch's related writ application without explanation on February 6, 2004.[7]

On January 28, 2005, Finch filed his first post-conviction application.[8] The state district court denied relief.[9] On February 28, 2005, Finch, through counsel, filed a motion for reconsideration, and the state district court set the matter for an evidentiary hearing.[10] On March 19, 2007, Finch filed a supplemental memorandum claiming: (1) insufficient evidence; (2) he was denied the right to testify at trial; (3) he was denied the right11/6/2025 to a trial by jury; (4) ineffective assistance of counsel in (a) waiving Finch's right to a jury trial without Finch's consent; (b) refusing to allow Finch to testify; and (c) failing to call several witnesses.[11] The state district court held an evidentiary hearing on May 18, 2007.[12] On June 27, 2007, the state district court denied relief. [13] Finch did not file a writ application or otherwise seek any further review of the decision.

---

[6] *State v. Finch*, 853 So. 2d 680 (La. App. 5th Cir. 2003); R. Doc. 16-1 at 2–8.

[7] *State v. Finch*, 865 So. 2d 738 (La. 2004); R. Doc. 17-1 at 35.

[8] R. Doc. 14-1 at 36, Docket Master Entry, 1/28/05.

[9] *Id.*

[10] *Id.*, Docket Master Entry, 2/28/05.

[11] R. Doc. 16-2 at 14–31, Defendant's Second Supplemental Memorandum in Support of Application for Post-Conviction Relief, 3/19/07; *id.* at 32–38, Supplemental Memorandum in Support of Application for Post Conviction Relief Filed Pursuant to La. C. Cr. Art. 924, et. seq., 3/19/07.

[12] R. Doc. 14-1 at 37, Docket Master Entry, 5/18/07.

[13] *Id.*, Docket Master Entry, 6/27/07.

On February 10, 2017, Finch filed a second counseled application for post-conviction relief.[14] Finch claimed that newly discovered evidence demonstrated that he received ineffective assistance of counsel in that trial counsel failed to: (1) investigate and interview an exculpating witness; (2) effectively cross-examine the State's expert pathologist or call an expert or their own on rebuttal; and (3) investigate his mental capacity.[15] He also claimed that he was actually innocent.[16] Finch included his affidavit, the affidavits of Kimberly Smith, Rhonda Finch, Terry Finch, Ronnie Finch, Jr., a February 7, 2017 report by a forensic pathologist, and a report by Dr. Janet Johnson, who evaluated Finch in January 2017, and reviewed the affidavits of his family members, and determined that, at the time of the incident, he suffered from post-traumatic stress disorder, alcohol and marijuana use disorder, and anxiety disorder, and that he was prone to poor judgment and impaired decision making, in part due to his childhood experiences.[17] On May 18, 2017, the court ordered an evidentiary hearing related to the claim of ineffective assistance of counsel for failure to investigate Finch's mental capacity and denied the remaining claims.[18]

On May 31, 2017, the State filed an unopposed motion to vacate the judgment ordering an evidentiary hearing, noting that it was entitled to file procedural

---

[14] R. Doc. 14-2 at 285–376, Petition for Post-Conviction Relief and Motion for Evidentiary Hearing, 2/10/17.
[15] Id. at 293–304.
[16] Id. at 305.
[17] Id. at 354–76.
[18] R. Doc. 16-2 at 82–85, Judgment, 5/18/17. Finch did not seek writs on the denial of his ineffective assistance of counsel claims regarding trial counsel's failure to investigate and interview an exculpating witness and effectively cross-examine the State's expert pathologist or call an expert witness.

objections prior to a determination that an evidentiary hearing was warranted, which was granted.[19] On June 9, 2017, the State filed procedural objections, arguing that Finch's application was untimely and repetitive pursuant to La. Code Crim. P. arts. 930.4 and 930.8.[20] On July 10, 2017, Finch filed an opposition brief claiming that his claims were based on newly discovered evidence.[21] On July 13, 2017, the state district court overruled the State's objections.[22]

The State sought a supervisory writ from the Louisiana Fourth Circuit Court of Appeal.[23] On September 20, 2017, the court, in granting the State's writ and reversing the state district court's ruling denying the procedural objections, found:

> In the present matter, approximately sixteen years after Ms. Moses' murder, Mr. Finch raises for the first time that he suffered mental health issues at the time of the crime. An allegation that a defendant suffered from mental health issues at the time of the murder, which occurred sixteen years ago, is not the type of evidence the legislature contemplated when it authorized substantive consideration of otherwise time-barred post-conviction applications based on "facts upon which the claim is predicated were not known to the petitioner or his prior attorneys." Given the law and the record before us, we find that the district court erred in denying the State's procedural objections.[24]

---

[19] R. Doc. 14-2 at 148–50, State's Unopposed Motion to Vacate Judgment Ordering Evidentiary Hearing, 5/31/17.

[20] *Id.* at 151–55, State's Procedural Objections to Defendant's Most Recent Application for Post Conviction Relief, 6/9/17.

[21] *Id.* at 162–250, Petitioner Randy Finch's Opposition to the State's Procedural Objections to his Application for Post-Conviction Relief, 7/10/17.

[22] R. Doc. 14-1 at 38, 7/13/17; *id.* at 206, Minute Entry, 7/13/17.

[23] R. Doc. 16-2 at 1–186, Writ Application, 2017-K-0058, 8/8/17.

[24] *State v. Finch*, 410 So. 3d 420, 243 (La. App. 4th Cir. 2017); Doc. 16-3 at 206–11.

On December 17, 2018, the Louisiana Supreme Court denied Finch's related writ application as untimely under La. S. Ct. R. X, § 5.[25] On March 18, 2019, the court refused to consider Finch's application for reconsideration, citing La. S. Ct. IX, § 6.[26]

In the interim, on January 23, 2018, Finch filed a counseled federal petition for habeas corpus relief.[27] On January 30, 2018, the Court granted Finch's motion to stay.[28] That case was reopened on November 9, 2020, and Finch filed an amended petition on November 18, 2020.[29] The case was subsequently stayed a second time on March 15, 2021.[30] Ultimately, Finch voluntarily withdrew the petition on November 3, 2022.[31]

On December 27, 2018, Finch filed a motion asserting that the following claims were still before the state district court: (1) ineffective assistance of counsel for failure to investigate, interview, and call an exculpatory witness; (2) ineffective assistance for failure to investigate and effectively cross-examine the State's expert pathologist; (3) ineffective assistance for failure to call an expert forensic pathologist; and (4) actual innocence.[32] The State opposed the motion.[33] Ultimately, the state district

---

[25] *State v. Finch*, 258 So. 3d 596 (La. 2018); R. Doc. 17-2 at 80.
[26] *State v. Finch*, 267 So. 3d 86 (La. 2019); R. Doc. 17-2 at 101.
[27] *Finch v. Vannoy*, 18-cv-660 "L"(3) (E.D. La.) at R. Doc. 1.
[28] *Id.* at R. Docs. 3 and 6.
[29] *Id.* at R. Docs. 23 and 25.
[30] *Id.* at R. Doc. 37.
[31] *Id.* at R. Docs. 55 and 56.
[32] R. Doc. 14-2 at 251–62, Motion to Order Answer Pursuant to Article 927, 12/27/18.
[33] *Id.* at 263–64, State's Memorandum in Opposition to Defendant's Motion to Order Answer Pursuant to Article 927.

court ordered the State to answer the purportedly remaining claims of ineffective assistance of counsel and actual innocence.[34]

On June 13, 2019, the Louisiana Fourth Circuit granted the State's writ application, finding as follows:

> This court's disposition in *State v. Finch*, 2017-0658, determined that the defendant's other claims had been resolved and then disposed of the remaining claim. Moreover, the defendants claims are procedurally barred: any deficiencies concerning counsel's performance should have been raised within the prescriptive period and/or in the earlier (timely filed) application for post-conviction relief in which defendant also claimed he received ineffective assistance of counsel. The realtor's claim of innocence is wholly unsupported and/or based on hindsight and/or new explanations concerning the evidence presented at trial, avenues for relief which the procedural hurdles set out La. Code Crim. Proc. 930.4 and La. Code Crim. Proc/ art. 930.8 were enacted to foreclose.[35]

On March 9, 2020, the Louisiana Supreme Court denied Finch's related writ application, finding that "[t]he application is repetitive. La.C.Cr.P. art. 930.4."[36]

On August 12, 2022, Finch, through counsel, filed yet another application for post-conviction relief claiming his sentencing counsel provided ineffective assistance.[37] The State filed procedural objections on September 19, 2022, claiming that the application was untimely and repetitive.[38] On March 21, 2023, the state district court held a hearing on the State's procedural objections.[39] The court denied

---

[34] R. Doc. 16-3 at 235, Order, 5/6/19; R. Doc. 14-1 at 213, Minute Entry, 5/7/19.
[35] *Id.* at 504–07, La. App. 4th Cir. Order, 2019-K-0473, 6/13/19.
[36] *State v. Finch,* 290 So. 3d 663 (La. 2020); R. Doc. 17-3 at 418–20.
[37] R. Doc. 14-4 at 66–265, Second Or Subsequent Uniform Application for Postconviction Relief, 8/12/22.
[38] R. Doc. 14-1 at 68–75, Attorney General's Procedural Objections to Petitioner's Successive Petition for Post-Conviction Relief and Opposition to Motion for Evidentiary Hearing, 9/19/22.
[39] *Id.* at 244, Minute Entry, 3/21/23.

the State's procedural objections and directed the State to file an answer by April 21, 2023.[40]

The State sought a supervisory writ of review.[41] On July 18, 2023, the Louisiana Fourth Circuit Court of Appeal granted the State's writ application, finding Finch's post-conviction application to be untimely.[42] Finch's application for rehearing was denied.[43] On February 14, 2024, the Louisiana Supreme Court denied Finch's related writ application without assigning reasons.[44]

## I.    Federal Petition

On February 14, 2025, Finch filed his counseled petition for habeas corpus.[45] Finch claims that his sentencing counsel was ineffective in failing to investigate and present mitigation evidence and in failing to move to reconsider the sentence.[46]

The State asserts that Finch's application is untimely.[47] Alternatively, the State claims that Finch's ineffective assistance of counsel claim is procedurally barred.[48] The State also asserts that the claims are meritless.[49]

Finch did not file a reply brief despite being given an opportunity to do so.

---

[40] *Id.*
[41] R. Doc. 16-4 at 3–82, Writ Application, 5/22/23.
[42] *Id.* at 107–09, La. App. 4th Cir. Order, 2023-K-0329, 7/18/23.
[43] *Id.* at 118, La. App. 4th Cir. Order, 8/22/23; *id.* at 110–117, Request for Rehearing and Request for Rehearing En Banc, 8/1/23.
[44] *State v. Finch*, 379 So. 3d 27 (La. 2024); R. Doc. 17-4 at 143.
[45] R. Doc. 1. Finch's counsel has since withdrawn from the case. R. Docs. 7 and 8.
[46] *Id.* at 14–17.
[47] R. Doc. 15 at 12–14
[48] *Id.* at 14–16.
[49] *Id.* at 17–21.

## II.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, applies to Finch's petition filed in this Court on February 14, 2025. The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419–20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

As indicated, the State claims that the petition should be denied as untimely, and, alternatively, the ineffective assistance of counsel claim is procedurally barred. For the following reasons, the petition is indeed untimely, and should be dismissed for that reason.

## III.    Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a statute of limitations for petitioners seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Specifically, the AEDPA provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United

States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Subsections B and C of 28 U.S.C. § 2244(d)(1) clearly do not apply in the instant case because Finch does not allege the existence of a state-created impediment or a newly recognized constitutional right.[50] The State argues that Subsection A applies, while Finch argues that Subsection D is instead applicable. Ultimately, however, that

---

[50] The Court recognizes that Finch argues that, pursuant to La. Code Crim. P. art. 930.8(A)(2), his 2022 application for state post-conviction relief was filed within one year of the Louisiana Fifth Circuit's decision in *Eugene v. Boutte*, No. 21-KH-414, 2021 WL 3569220 (La. App. 5th Cir. Aug. 12, 2021), *writ denied*, 360 So. 3d 487 (La. 2023), which permitted a claim of ineffective assistance of counsel at sentencing based on *State v. Harris*, 340 So. 3d 845 (La. 2020), to move forward. R. Doc. 1 at 2–4. Yet, in this case, the Louisiana Fourth Circuit Court of Appeal, in granting the State's writ application, found that *Eugene* did not provide an exception under art. 930.8(A)(2) "because nothing in *Harris* suggested that the Supreme Court intended that its ruling be limited to cases in which the sentencing statute provided flexibility…." R. Doc. 16-4 at 108, La. App. 4th Cir. Order, 2023-K-0329, 7/18/23. Regardless, § 2244(d)(1)(C) runs from the "the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *Johnson v. Cain*, 2009 WL 3367054, at *6 (E.D. La. 2009) ("The limitations exception, or trigger, found in Section 2244(d)(1)(C), by its very terms, looks to a new constitutional *right created and made retroactive by the United States Supreme Court*, not by a state court's interpretation or application of a Supreme Court decision.") (emphasis in original). Section 2244(d)(1)(C) is simply not applicable in this case.

disagreement is of no consequence – Finch's petition would be untimely under either of these subsections.

### A. Subsection A

If Subsection A applies, Finch's federal application is clearly untimely. As noted, under that subsection, the AEDPA's statute of limitations commences on the date a petitioner's state court judgment becomes final. The United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. *Roberts v. Cockrell*, 319 F.3d 690, 693 (5th Cir. 2003).

*Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008).

The Louisiana Supreme Court denied Finch's direct-review writ application on February 6, 2004.[51] Finch's state criminal judgment became final for federal purposes 90 days later, on May 6, 2004, which was the last date Finch could have sought further review with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510 (5th Cir.1999) (the state court judgment is not final for habeas purposes until the ninety day period for filing a writ of certiorari to the United States Supreme Court has expired); Sup. Ct. R. 13. Accordingly, his period for seeking federal habeas corpus

---

[51] *Finch*, 865 So. 2d at 738; R. Doc. 17-1 at 35.

relief commenced on that date and then expired one year later on May 6, 2005, unless that deadline was extended through statutory or equitable tolling.

The Court first considers statutory tolling. Regarding the limitations period set forth in § 2244(d)(1), federal law expressly provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219–20 (2002); *Williams v. Cain*, 217 F.3d 303, 310 (5th Cir. 2000) (a matter is "pending" for § 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'").

After 267 days, on January 28, 2005, Finch filed his first application for post-conviction relief, and it remained pending through July 27, 2007, when the time expired for Finch to file a writ application with the Louisiana Fourth Circuit Court of Appeal. *See* La. Unif. Ct. App. Rule 4-3. At that time, Finch had 98 days remaining of the one-year limitations period, or until November 2, 2007, to file his habeas petition. On that day, November 2, 2007, Finch had no properly filed state post-conviction or other collateral review related to this case pending in any court to further interrupt the running of the AEDPA one-year filing period. The AEDPA limitations period therefore expired on November 2, 2007.

While Finch filed two more applications for post-conviction relief in 2017 and 2022, those applications could not revive the one-year federal limitations period which had expired on November 2, 2007. *See Madden v. Thaler*, 521 F. App'x 316, 320 (5th Cir. 2013) (citing *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000)); *Magee v. Cain*, No. 99-3867, 2000 WL 1023423, at *4 (E.D. La. July 24, 2000), *aff'd*, 253 F.3d 702 (5th Cir. 2001) (citing *Williams v. Cain*, No. 00-536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000)). Simply put, once the federal limitations period expired, "[t]here was nothing to toll." *Butler*, 533 F.3d at 318.

Nor is Finch is entitled to a re-start of his prescriptive period by virtue of his August 12, 2022 post-conviction application. Statutory tolling is triggered only by "a properly filed application for State post-conviction or other collateral review." 28 U.S.C. § 2244(d)(2). The United States Supreme Court has expressly held that time limits are conditions of filing and, therefore, an untimely state application cannot be deemed "properly filed" for the purposes of § 2244(d)(2). *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005). "When a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)." *Id.* at 414 (quotation marks and brackets omitted). As noted, in the last reasoned decision, the Louisiana Fourth Circuit Court sustained the State's procedural objections and found that Finch's 2022 post-conviction application was untimely filed under La. Code Crim. P. art. 930.8.[52] The Louisiana Supreme Court tacitly adopted that reasoning in its unexplained

---

[52] R. Doc. 16-4 at 107–09, La. App. 4th Cir. Order, 2023-K-0329, 7/18/23.

denial of Finch's subsequent writ application on February 14, 2024.[53] *Wilson v. Sellers*, 584 U.S. 122, 125 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale . . . then presume that the unexplained decision adopted the same reasoning."); *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (noting that when the last state court judgment does not indicate whether it is based on procedural default, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

The Court next considers equitable tolling. The United States Supreme Court has held that the AEDPA's statute of limitations is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010). Yet, "equitable tolling is unavailable in most cases...." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999); *accord Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances"). Indeed, the Supreme Court held that "a petitioner is entitled to equitable tolling only if he shows both that (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (internal quotation marks omitted). A habeas petitioner bears the burden of proof to establish entitlement to equitable tolling. *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002). Here, Finch has not identified any evidence

---

[53] *Finch*, 379 So. 3d at 27; R. Doc. 17-4 at 143.

demonstrating that he is entitled to equitable holding, and this Court knows of no reason that would support equitable tolling of the statute of limitations.

Finally, the Court notes that a petitioner can overcome the AEDPA's statute of limitations by making a convincing claim of "actual innocence" under *McQuiggin v. Perkins*, 569 U.S. 383 (2013).[54]

In the instant case, Finch has not invoked *McQuiggin*. Rather, it appears that he concedes his guilt.[55]  In the event he does so in any objections to this Report and Recommendation, the undersigned finds that he has failed to make the showing required under *McQuiggin* for the following reasons.

In assessing a claim of actual innocence, a court normally first examines the evidence presented at trial and on which the petitioner's conviction was based. *See, e.g.*, *Johnson v. Cain*, No. 14-543, 2015 WL 4528889, at *3 (E.D. La. July 27, 2015), *aff'd*, 667 F. App'x 474 (5th Cir. 2016); *Lyles v. Tanner*, No. 13-655, 2014 WL 4674673, at *6 (E.D. La. Sept. 17, 2014). Here, Finch was convicted of second-degree murder. The Louisiana Fifth Circuit summarized the evidence as follows:

> Ms. Etta Briscoe, the mother of the twenty-three year old victim, testified that the defendant had a seven-year relationship with her daughter, Tamika Moses, who was the mother of Finch's three children. Finch lived with Tamika at Ms. Briscoe's house for some time. About 11:00 a.m. on September 16, 2001, Ms. Briscoe left her home to go to a

---

[54] Actual innocence constitutes an "equitable *exception*" to the statute of limitations, rather than an equitable basis on which to toll it. *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (emphasis original).

[55] R. Doc. 1 at 11 ("Understanding these disorders also accounts for how and why Randy's and Tamika's confrontation escalated, turned violent, and resulted in him eventually killing her."), 15 ("The evidence demonstrates that Mr. Finch did not go to Tamika Moses's home with the intention to kill her. His mental health disorders allowed a volatile situation to fatally escalate.").

cousin's house to get her hair done. Tamika was at home. Sometime later she received a telephone call from Derika Jackson, a friend of Tamika, who told her that Finch was at the house and Tamika was crying. Ms. Briscoe went home immediately. Tamika's father had just arrived at the house and was standing in the doorway. Ms. Briscoe rushed past him to Tamika's bedroom. There she saw her daughter bleeding from a head wound. Ms. Briscoe and Tamika's father took her to the hospital immediately. She was there about twenty minutes before she died. Under cross-examination, Ms. Briscoe stated that she was never aware of jealousy problems between Finch and Tamika. She denied knowing of her daughter's relationship with any other men.

Dr. James Traylor, a forensic pathologist who performed the autopsy on Tamika, testified that Ms. Moses died from internal bleeding and injuries caused by repeated blows to her abdominal area. Ms. Moses' liver was lacerated or torn from front to back, the vein supplying blood to her intestines was completely severed, and her right kidney had two lacerations or tears. Ms. Moses also suffered a spiral fracture in her upper right arm, abrasions to her left shoulder and on the left side of her neck, and a bruise on her right breast.

Winnie Peter, the victim's co-worker, testified that the defendant called her several times after he left Ms. Moses' apartment to inquire about the victim's condition. Ms. Peters further testified that he admitted he repeatedly kicked Ms. Moses until she was unconscious.

Detective Danny Wharton, of the New Orleans Police Department, testified that while he was at the scene of the beating, the telephone rang and he answered it. A person identifying himself as "Randy" asked for Tamika. Upon being told that Tamika was not there Randy asked why the police were there. Detective Wharton then inquired if he had had an altercation with Tamika. Randy responded "yes," that he did have an altercation. When told that he needed to come to the police station to discuss the situation, Randy declined saying he would call back. A short time later Randy called back wanting to know what was wrong with Tamika. Detective Wharton informed him that he needed to go to the station and that Tamika "may not make it." Randy replied that he did not know if he would come because he did not want to go to jail. Ultimately, though, he turned himself in after a warrant had been issued for his arrest.[56]

---

[56] *Finch* 853 So. 3d at 681–82; R. Doc. 16-1 at 3–5.

At the next step of an "actual innocence" analysis, a federal court then considers the **new** evidence of **actual innocence** offered by the habeas petitioner. Specifically, the United States Supreme Court has explained that, in order to assert a credible claim of actual innocence, a petitioner is required "to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Here, however, Finch has presented no new evidence whatsoever relating to his factual innocence on the underlying crime to which he was found guilty. Without such evidence, he simply cannot meet even "the threshold requirement" for *McQuiggin* to apply, i.e. a showing that "'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329). Accordingly, *McQuiggin* does not aid him.

### B. Subsection D

Finch claims that he is entitled to a delayed commencement under 28 U.S.C. § 2244(d)(1)(D).[57] For the reasons that follow, Finch has failed to demonstrate that the Subsection D is the appropriate statutory trigger for the federal limitations period.

---

[57] R. Doc. 15-1 at 14–15.

Subsection D provides for delayed commencement of the federal limitations period when a petitioner's claim is based on a factual predicate that could not have been discovered earlier through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(D). Notably, this subsection does not delay the commencement of the limitations period until the date on which the factual predicate of a claim was in fact discovered or developed; rather, it delays§ commencement only until the date on which it "could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D); *see Manning v. Epps*, 688 F.3d 177, 189–90 (5th Cir. 2012) (argument that § 2244(d)(1)(D) runs from actual discovery of claim is an "untenable theory."); *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) ("the time commences when the factual predicate 'could have been discovered through the exercise of due diligence,' not when it was actually discovered by a given prisoner ... [and] not when the prisoner recognizes their legal significance.").

The United States Fifth Circuit has held "that this means the date a petitioner is on notice of the facts which would support a claim, not the date on which the petitioner has in his possession evidence to support his claim." *In re Young*, 789 F.3d 518, 528 (5th Cir. 2015) (citing *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998)). "Section 2244(d)(1)(D) does not convey a statutory right to an extended delay … while a *habeas* petitioner gathers every possible scrap of evidence that might … support his claim." *Galbraith v. Hooper*, No. 22-30159, 2025 WL 2407275, at *8 (5th Cir. Aug. 20, 2025) (citing *Flanagan*, 154 F.3d at 199).

As another court explained,

17

> The "test of due diligence under section 2244(d)(1)(D) is objective, not subjective." **Petitioner must show why he was unable to discover the factual predicate at an earlier date. Merely alleging that he did not know the facts underlying his claim(s) is insufficient**. Several courts have equated the exercise of due diligence to a rule of "inquiry notice." In other words, when should a petitioner "have learned of the new evidence" had he "exercised reasonable care." The due diligence standard "requires the petitioner to exercise the consideration expected of a reasonably prudent person under similar circumstances."

*Matthews v. Louisiana*, No. 18-589, 2021 WL 4484991, at *3 (M.D. La. Aug. 18, 2021) (emphasis added; footnotes omitted), *adopted*, 2021 WL 4480990 (M.D. La. Sept. 29, 2021); *accord Koon v. Cain*, No. 13-2538, 2014 WL 120894, at *5 (W.D. La. Jan. 13, 2014) ("[L]imitations is not reckoned from the date petitioner discovered the factual predicate of his claim, but rather from the date it 'could have been discovered through the exercise of due diligence ...' [Section 2244(d)(1)(D)] and petitioner bears the burden of establishing that date." (italics omitted)); *Dabbs v. Thaler*, No. 3:12-CV-0597, 2012 WL 4442414, at *3 (N.D. Tex. Sept. 5, 2012) ("The petitioner bears the burden of establishing the applicability of section 2244(d)(1)(D), including his due diligence."), *adopted*, 2012 WL 4458402 (N.D. Tex. Sept. 26, 2012); *Allen v. Hancock*, No. 1:11CV123, 2011 WL 7461993, at *2 (S.D. Miss. Nov. 9, 2011) ("Petitioner bears the burden in establishing that he exercised due diligence in searching for a factual predicate for his habeas claim."), *adopted*, 2012 WL 728546 (S.D. Miss. Mar. 6, 2012), *certificate of appealability denied*, No. 12-602000 (5th Cir. Aug. 8, 2012); *Redmond v. Jackson*, 295 F. Supp. 2d 767, 772 (E.D. Mich. 2003) ("[A] habeas petitioner has the burden of proof in establishing that he exercised due diligence in searching for the factual predicate of the habeas claims.").

Finch appears to contend that the factual basis for his claims in his habeas petition was unknown to him until he was evaluated by a psychiatrist in 2017, at which time Dr. Johnson diagnosed him with a history of substance abuse, anxiety, and post-traumatic stress disorder.[58] Therefore, the "factual predicate" of Finch's claims is that his childhood history impacted his decision making and diminished his culpability.

Finch misunderstands Subsection D and confuses his knowledge of the factual predicate of his claims with the time permitted for gathering evidence in support of that claim. "The relevant inquiry under Subsection D is not the date the fact in question was actually discovered, **but the date it could have been discovered with reasonable diligence**." *Roberts v. Cain*, No. 14-2119, 2016 WL 7438489, at \*6 (E.D. La. Dec. 27, 2016) (emphasis added), *certificate of appealability denied*, No. 17-30020, 2017 WL 6811900 (5th Cir. Oct. 12, 2017). Thus, the limitations period would not run from the date on which Finch had in his possession all evidence to support his claims, but rather the date on which Finch could have discovered the evidence through the exercise of due diligence.

There is no question that Finch and his family members were aware of his childhood history at the time of his sentencing. The information in the affidavits of Finch, his siblings, and cousin, which Dr. Johnson reviewed in evaluating Finch, could have been presented at his sentencing.[59] Thus, evidence regarding Finch's

---

[58] R. Doc. 1 at 10–11.
[59] R. Doc. 14-2 at 354–59, Affidavit from Randy Finch, 2/9/17; *id.* at 550–53, Affidavit of Rhonda Finch, 2/3/17; *id.* at 554–55, Affidavit of Terry Finch, 2/7/15; *id.* at 556–58, affidavit of Ronnie Finch, Jr., 2/9/17.

childhood does not constitute a new factual predicate that would alter the beginning date of the AEDPA one-year statute of limitations.

Additionally, it appears that Finch's most recent post-conviction counsel was retained in early 2017, and that she arranged a psychological evaluation of Finch related to his murder conviction.[60] Finch has offered no explanation as to why he could not have undergone an evaluation earlier. *See Allen*, 2011 WL 7461993, at *2 (finding that to meet the burden under Subsection D, a petitioner "must offer an explanation of why the factual predicate could not have been discovered earlier and steps, if any, that were taken to discover his claim.").

On this record, the Court concludes that Finch was aware of his childhood history and could have presented it at his sentencing hearing. Further, had Finch exercised due diligence, he could have undergone a psychological evaluation to provide a mental health context for his behavior sometime before the nearly fifteen years that followed his conviction. *See also Flanagan*, 154 F.3d at 199 (finding it well established that § 2244(d)(1)(D) does not "convey a statutory right to an extended delay ... while a habeas petitioner gathers every possible scrap of evidence that might ... support his claim."). For these reasons, Finch has failed to present a basis for the Court to apply the § 2244(d)(1)(D) factual predicate trigger in his case.

Because Finch is not entitled to further statutory tolling, and because he has not established that he is eligible for equitable tolling or that he is actually innocent,

---

[60] *See* R. Doc. 14-2 at 542, Independent Psychiatric Evaluation by Dr. Johnson, 2/9/17 ("Pursuant to a request by Emily Posner, attorney for the defendant, I interviewed Mr. Randy Finch for the purpose of assessing his current and past psychiatric functioning.").

his federal application for habeas corpus relief had to be filed no later than November 2, 2007, in order to be timely. Because his application was filed February 14, 2025, it was untimely. Therefore, his federal habeas corpus petition must be dismissed with prejudice.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that Randy Finch's application be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 6th day of November, 2025.

**EVA J. DOSSIER**
**UNITED STATES MAGISTRATE JUDGE**